FILED
2021 Aug-25  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DANNY RAY GILLILAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-00571-CLM** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Danny Gillilan seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Gillilan's application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA Appeals Council then denied Gillilan's request for review.

Gillilan argues: (1) that the ALJ should have afforded more weight to the opinion of Dr. Khusro, (2) that the Appeals Council failed to adequately evaluate his new evidence, and (3) that when the evidence submitted to the Appeals Council is considered, the SSA's denial of benefits is not supported by substantial evidence.

As detailed below, after considering the parties' briefs and with the benefit of oral argument, the court finds no error in the ALJ's opinion. But the court agrees that the Appeals Council erred in failing to consider a psychological evaluation from

1

Dr. June Nichols, a consultative examiner. So the court will **REMAND** this case for the Commissioner to consider the psychological evaluation.

## I.     Statement of the Case

### A.     Gillilan's Disability, as told to the ALJ

Gillilan was 33 years old when he applied for SSI. R. 21. Gillilan went to high school through the 11th grade and dropped out in 12th grade. R. 71. Gillilan has past work experience as a construction laborer and wholesale merchandiser. R. 235.

At the ALJ hearing, Gillilan stated that he has trouble focusing and often gets anxiety attacks. R. 78. He also testified that he takes medication for his anxiety. R. 81. Gillilan also suffers from depression and tried to kill himself after suffering from a nervous breakdown in 2010. R. 90–91. Gillian says that he hasn't been the same since his nervous breakdown and that he gets irritable when around people outside his family. R. 92, 95.

Gillilan lives with his parents. R. 71. And he tries to help them around the house by taking out the garbage and picking up after himself. R. 86. On a typical day, Gillilan wakes up, feeds his dogs, watches TV, and then goes back to bed. R. 86–87.

### B.     Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.   Gillilan's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Gillilan applied for SSI in February 2017, claiming that he was unable to work because of various ailments, including obesity, degenerative joint disease, essential hypertension, depressive/bipolar disorder, neurodevelopment disorder, and anxiety/obsessive disorders. After receiving an initial denial in April 2017, Gillilan requested a hearing, which the ALJ conducted in February 2019. The ALJ ultimately issued an opinion denying Gillilan's claims in April 2019. R. 9–23.

At Step 1, the ALJ determined that Gillilan was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 14.

At Step 2, the ALJ determined that Gillilan suffered from the following severe impairments: degenerative joint disease/osteoarthritis/meniscal tear of the right knee; essential hypertension; depressive/bipolar disorder; neurodevelopmental disorder; and anxiety/obsessive disorders. R. 14–15.

At Step 3, the ALJ found that none of Gillilan's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 15–16. Thus, the ALJ next had to determine Gillilan's residual functional capacity.

The ALJ determined that Gillilan has the residual functional capacity to perform medium work with these added limitations:

- Gillilan cannot climb ladders, ropes, and scaffolds;

- Gillilan can only frequently balance, stoop, kneel, crouch, and crawl;

- Gillilan must avoid concentrated exposure to extreme cold, vibration, fumes, odors, gases, dusts, poor ventilation, and other pulmonary irritants;

- Gillilan must avoid all exposure to hazards such as open flames, unprotected heights, and dangerous moving machinery;

- Gillilan is limited to unskilled work which is simple, repetitive, and routine;

- Gillilan's supervision must be simple, direct, tactful, constructive, and non-threatening;

- Gillilan's interpersonal contact with supervisors and coworkers must be incidental to the work performed;

- Gillilan should have only occasional, gradually introduced workplace changes;

- Gillilan must have normal, regular work breaks at least every two hours;

- Gillilan should have only occasional, non-intensive contact with the general public; and,

- Gillilan likely must miss one day of work per month because of psychological symptoms.

R. 16–21.

At Step 4, the ALJ found that Gillilan could not perform his past relevant work. R. 21. At Step 5, the ALJ determined that Gillilan could perform jobs, such as linen room attendant and small product assembler, that exist in significant numbers in the national economy and thus Gillilan was not disabled under the Social Security Act. R. 21–23.

### D.    The Appeals Council Decision

Gillilan requested an Appeals Council review of the ALJ's decision. R. 1–5. As part of his request for review, Gillilan submitted a psychological evaluation report and mental health source statement from Dr. June Nichols, a consultative examiner. Gillilan also submitted a mental health source statement from Dr. Huma Khusro, his treating psychiatrist at CED Mental Health Center. The Appeals Council did not exhibit the mental health source statements, finding that they did "not show a reasonable probability that it would change the outcome of the decision." R. 2. The Appeals Council then denied Gillilan's request for review without referencing the psychological evaluation from Dr. Nichols. So the ALJ's decision became the final decision of the SSA Commissioner.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g);

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the Commissioner applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   Legal Analysis

Gillilan makes three arguments for why the SSA erred in denying his application for SSI. He first challenges the ALJ's evaluation of the opinion of Dr. Khusro, his treating psychiatrist. His second and third arguments relate to the Appeals Council's decision and work together: (a) the Appeals Council erred in evaluating the new evidence from Dr. Nichols; and, (b) once this "new evidence" is considered alongside the evidence presented to the ALJ, the decision to deny Gillilan's application for SSI is not supported by substantial evidence. The court will address each argument in turn.

### A.   The ALJ properly evaluated Dr. Khusro's opinion evidence.

Gillilan's argument that the ALJ erred centers on the ALJ's evaluation of opinion evidence from Dr. Khusro, his treating psychiatrist at CED Mental Health

Center.[1] In December 2016, Dr. Khusro said that she believed Gillilan is disabled and unable to work. R. 303. So Dr. Khusro recommended that Gillilan apply for disability. *Id.* The ALJ stated that he gave Dr. Khusro's "opinion no weight because determinations of ability to work are reserved to the Commissioner and because the opinion is inconsistent with the claimant's conservative treatment records and other evidence in this case." R. 21.

Gillian argues that the ALJ erred in giving Dr. Khusro's opinion no weight because she was a treating source whose opinions the ALJ had to give substantial or considerable weight absent good cause to discount her opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted). But an ALJ needn't have good cause to discount an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)–(3), 416.927(d)(1)–(3). The Social Security regulations only

---

[1] Gillilan also makes a passing reference to the ALJ's failure to order a consultative mental examination, stating only that "[t]he ALJ did not order a mental consultative examination." Doc. 10 at 28. "[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). So Gillilan has abandoned any argument that the ALJ should have ordered a consultative mental examination.

require ALJs to "consider" these opinions. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011).

Dr. Khusro's statements that Gillilan was disabled and unable to work are not medical opinions but are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of [Gillilan's] case." 20 CFR § 416.927(d)(1). So the ALJ did not have to afford any special significance to these statements. 20 CFR § 416.927(d)(3). And the ALJ's references to these statements shows that he considered them. The court thus sees no error in the ALJ's decision to afford Dr. Khusro's statements no weight.

**B.      The Appeals Council needs to consider Dr. Nichols's evaluation.**

Gillian next argues that the Appeals Council committed several errors when it denied his request for review. The Appeals Council does not have to review an ALJ's denial of benefits. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). "But the Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits." *Id.* (quotations and citations omitted). "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321. The court finds that the Appeals Council erroneously failed to consider the psychological evaluation from Dr. Nichols. So it is the only alleged Appeals Council error that the court will address.

1. <u>Background</u>: Around four months after the ALJ issued its hearing decision, Dr. Nichols reviewed Gillilan's mental health records and performed a psychological evaluation on Gillilan. R. 59–62. During the evaluation, Gillian "presented as neat and clean" and had fair eye contact. R. 60. He had a depressed mood and sad/tearful affect. *Id.* Gillilan denied suicidal or homicidal ideation but said, "that he often questions his purpose in living." *Id.* Gillilan also appeared oriented to person, place, time, and situation, and his thought processes were within normal limits. R. 61. And Dr. Nichols found no evidence that Gillilan suffered from hallucinations, delusions, ideas of reference, an internal psychotic process, obsessions, or compulsions. *Id.* But Dr. Nichols found that Gillilan "demonstrated problems with both mental control and attention" and "mild problems with working memory." *Id.*

Following her psychological evaluation, Dr. Nichols found that Gillilan could "understand, remember and carry out very short simple instructions." R. 62. She also determined that Gillilan "cannot maintain attention, concentration and/or pace for periods of at least 2 hours." R. 62. She then stated that Gillilan cannot perform activities within a schedule, be punctual with customary tolerances, or sustain an ordinary routine without special supervision. *Id.* Finally, Dr. Nichols found that Gillilan would have a difficult time adjusting to routine or infrequent work changes,

cannot maintain socially appropriate behavior, and would have trouble adhering to basic standards of neatness and cleanliness. *Id.*

A month later, Dr. Nichols filled out a one-page mental health source statement for Gillilan. Dr. Nichols's answers to the questions in the mental health source statement reiterated most of her findings during the psychological examination. For example, Dr. Nichols circled that Gillilan cannot maintain attention, concentration, and/or pace for periods of at least two hours. R. 58. But contrary to her psychological evaluation, Dr. Nichols said that Gillilan cannot understand, remember or carry out very short and simple instructions. *Id.* Dr. Nichols then stated that Gillilan would be off task 50 to 60% of the time in an 8-hour workday and that he would likely miss 25 days of work in a 30-day period. *Id.*

Gillilan submitted to the Appeals Council the psychological evaluation, Dr. Nichols' mental health source statement, and a mental health source statement from Dr. Khusro as "new evidence" to consider in the first instance. In its denial letter, the Appeals Council acknowledged receipt of the mental health source statements but found "that this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." R. 2. The Appeals Council's denial letter does not, however, reference Dr. Nichols' psychological evaluation or explain why the evaluation doesn't provide a basis for changing the ALJ's decision. R. 1–3.

11

The Commissioner conceded at oral argument that the Appeals Council's failure to mention Dr. Nichols' psychological evaluation strongly suggests that the Appeals Council didn't consider the evaluation before denying Gillilan's request for review. But the Commissioner argues that any error in failing to consider the evaluation is harmless—*i.e.*, the Appeals Council didn't have to consider the evaluation—because (a) the evaluation wasn't chronologically relevant, and (b) Dr. Nichols's opinions about Gillilan's functional capacity were opinions on issues reserved to the Commissioner.

2. <u>Chronological relevance</u>: Newly submitted evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." *See* 20 C.F.R. § 416.1470(a)(5). The Commissioner contends that the psychological evaluation isn't chronologically relevant because Dr. Nichols is a consultative examiner who didn't evaluate Gillilan until four months after the ALJ's hearing decision.

But "[m]edical examinations conducted after an ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision." *Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 940 (11th Cir. 2017). In *Washington*, the Eleventh Circuit found a post-ALJ decision psychological evaluation chronologically relevant when: "(1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had

reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision." *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). A subsequent evaluation is not chronologically relevant when nothing suggests the doctor considered the claimant's past medical records when forming his opinion and the doctor did not treat the claimant during the relevant period. *See id.* at 1310.

The court finds that the psychological evaluation is chronologically relevant for three reasons. First, the Appeals Council did not say that that Dr. Nichols' mental health source statement was chronologically irrelevant—even though Dr. Nichols filled out the mental health source statement a month ***after*** she made the psychological evaluation. The Appeals Council instead found that the mental health source statement "does not show a reasonable probability that it would change the outcome of the decision." R. 2.

Second, the record suggests that Dr. Nichols based her opinions, at least in part, on material from the relevant period. For example, Dr. Nichols stated in the mental health source statement that Gillilan's "limitations existed back to 10/5/16." R. 58. And in the background section of her psychological evaluation, Dr. Nichols listed several medical records provided for review, including a 4/7/2017 medical examination from the relevant period. R. 59. The summary section of the evaluation also shows Dr. Nichols's familiarity with Gillilan's CED Mental Health records and

13

suggests that Dr. Nichols reviewed Gillilan's records through January 2019, which was three months before the ALJ issued his decision. R. 62. Plus, Gillilan told Dr. Nichols about his mental health struggles from 2010 onward. R. 59–60. So Dr. Nichols apparently considered evidence from the relevant period when forming her opinions.

Third and finally, the evidence does not reflect that Gillilan's condition worsened during the four months in between the ALJ's decision and Dr. Nichols's evaluation. The court thus finds the psychological evaluation chronologically relevant.

3. <u>Materiality</u>:  So the court turns to materiality. "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress*, 883 F.3d at 1309. Here, the psychological evaluation provides information about Gillilan's ability to maintain attention, concentration, and pace; his alleged inability to perform activities within a schedule and be punctual; and his alleged need for special supervision to sustain an ordinary routine. R. 62. Though the Commissioner points out that the ALJ encompassed many of these limitations in his residual functional capacity determination, the court finds that a reasonable possibility exists that Dr. Nichols's opinion may cause the ALJ to find that Gillilan cannot perform any work in the national economy.

To start with, the Commissioner doesn't dispute that, if accepted as true, the limitations identified in the psychological evaluation would render Gillilan disabled. At the ALJ hearing, a vocational expert testified that a person who (a) needs frequent unscheduled work breaks and who (b) will be off task at least 20% of each workday because of memory and focus problems wouldn't maintain work in the national economy. R. 105. If the ALJ accepted that testimony as true, then the ALJ may have found that Gillilan was disabled based on Dr. Nichols' opinion that Gillilan cannot maintain attention/concentration/pace for at least two hours and cannot perform activities within a schedule.

And the court cannot say that no reasonable factfinder would credit Dr. Nichols's opinions. The record before the ALJ included only two medical opinions on Gillian's mental health. The first was Dr. Khusro's opinion that Gillilan is disabled and unable to work, which the court has explained the ALJ properly rejected because it was an opinion on an issue reserved to the Commissioner. The second was an opinion from Dr. Samuel Williams, a state agency medical consultant who did not examine Gillilan. And "as a non-examining physician, his opinion is, as a general matter, entitled to less weight than an examining physician like Dr. [Nichols]." *Hunter*, 705 F. App'x at 941.

The court also rejects the Commissioner's argument that Dr. Nichols's opinions are unlikely to change the administrative result because her opinions were

15

on Gillilan's functional capacity. To be sure, "the final responsibility for deciding [a claimant's residual functional capacity] is reserved to the Commissioner," so ALJs need not "give any special significance" to an opinion on a claimant's residual functional capacity. *See* 416.927(d)(2)-(3). But an ALJ still must consider a medical source's opinion on this issue. *See id.* And here, the ALJ considered the state agency physician's opinions on Gillilan's functional capacity and gave it great weight. R. 20. So that another doctor who reviewed Gillilan's medical records and evaluated him found that he needed greater functional limitations might change the administrative result. Plus, though not all Gillilan's records support Dr. Nichols's opinions, her opinions align with treatment notes that reflect that Gillilan has inadequate/diminished concentration, is often irritable, has trouble controlling his emotions, and suffers from passive suicidal ideation. R. 341, 342, 346, 379, 388.

The court finally notes that the psychological evaluation isn't immaterial just because the Appeals Council considered Dr. Nichols's one-page mental health source statement and found no reasonable probability that it would change the outcome of the ALJ's decision. Though Dr. Nichols expressed similar opinions in both forms, the psychological evaluation is a much more detailed medical record than her mental health source statement. From the psychological evaluation, you can tell the symptoms Gillilan reported to Dr. Nichols, the medical records that she reviewed, and the information she considered before forming her opinions. The

Appeals Council couldn't glean this information from the mental health source statement. So the court finds that a reasonable possibility exists that the psychological evaluation could change the administrative result.

* * *

In summary, Dr. Nichols's psychological evaluation was new, material, and chronologically relevant. So the Appeals Council erred when it did not consider the psychological evaluation before denying Gillilan's request for review. In reaching this decision, the court is not holding that the Appeals Council must grant Gillilan's request for review or that the psychological evaluation renders the denial of benefits erroneous.[2] Instead, the court is merely requiring the Appeals Council to consider the psychological evaluation before denying review. On remand, the Commissioner must decide based on the entire record, including the psychological evaluation, if review of the ALJ's decision is warranted, and, if so, whether to affirm the ALJ.

---

[2] Because the court must remand this case for consideration of the psychological evaluation, the court need not address Gillilan's argument that once the new evidence is considered the ALJ's decision to deny benefits is not supported by substantial evidence. *See Washington*, 806 F.3d at 1323 n.10.

## IV.    Conclusion

For the reasons stated above, the court will **REMAND** this case to the Commissioner for the Appeals Council to consider the psychological evaluation. The court will enter a separate final order that closes this case.

**DONE** on August 25, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

18